[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10624
Non-Argument Calendar
_____

Agency No. A206-157-953

ARNOLDO ULISES FERNANDEZ-GONZALEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(December 4, 2017)

Before HULL, JULIE CARNES and FAY, Circuit Judges.

PER CURIAM:

Arnoldo Ulises Fernandez-Gonzalez petitions for review of the Board of Immigration Appeals' ("BIA") final order affirming the Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal, and Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment of Punishment ("CAT") relief.  We deny his petition.

## I. BACKGROUND

Fernandez-Gonzalez, a citizen of El Salvador, entered the United States without inspection in July 2013.  That month, the Department of Homeland Security ("DHS") conducted an interview; Fernandez-Gonzalez stated that he entered the United States in order to live and work in Miami, Florida, and he confirmed that he would not be harmed or face persecution if he returned to El Salvador.  On August 9, 2013, Fernandez-Gonzalez filed an I-589 application for asylum pursuant to the Immigration and Nationality Act ("INA") § 208(a), 8 U.S.C. § 1158(a), withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and CAT relief, 8 C.F.R. § 208.16(c).

During an interview with an asylum officer on August 16, 2013, Fernandez-Gonzalez stated that he was afraid to return to El Salvador because a group of unknown people were extorting money from him, asking him to distribute weapons, and forcing him "to do [a] bunch of things" because he was a soldier and prison guard.  R. at 394.  He stated that, on May 20, 2011, individuals from the

2

group attacked him, but he ran and escaped with "just a few bruises." R. at 394-95. They beat him because they wanted him to smuggle contraband in and out of prisons but he had refused. The group later told him that they would kill him if he did not give them $3,000, weapons, and ammunition by December 30, 2012. Fernandez-Gonzalez then broke the chip in his phone, moved to live with his aunt and uncle in San Salvador, and did not hear from the group again. Fernandez-Gonzalez never reported the group to the police or authorities. He was afraid the group might hurt his family if he reported them and that he would be killed if he returned to El Salvador.

On August 21, 2013, DHS issued Fernandez-Gonzalez a notice to appear, charging him with being removable under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), for being an alien not in possession of a visa or an entry or travel document. At a master calendar hearing, Fernandez-Gonzalez admitted the facts in the notice to appear; the IJ found him removable as charged.

On April 9, 2014, Fernandez-Gonzalez filed an expanded I-589 application for asylum and withholding of removal, based on political opinion and membership in a particular social group, and for CAT relief. In support of his asylum claim, he submitted documentation of his military service and sworn statements from relatives stating Fernandez-Gonzalez had been threatened by gang members. He also submitted documentation about the conditions in El Salvador.

3

At the merits hearing, Fernandez-Gonzalez testified about the events described in his interview and I-589 applications. Fernandez-Gonzalez stated that he did not have any problems in San Salvador where he had lived with his aunt and uncle. He also testified that his sworn statement during his first immigration interview was not correct when it stated that he came to the United States to live and work in Miami.

The IJ issued an oral decision denying Fernandez-Gonzalez's claims. The IJ noted that Fernandez-Gonzalez was unable to provide specific information about any of the threats outside of the May 2011 beating, the medical treatment that he received afterward, or the identity of the persons or gang groups he claimed threatened him. The IJ concluded that although Fernandez-Gonzalez's testimony about his military service in El Salvador was credible, his testimony about the harm he had suffered was very general and lacked detail. The IJ noted that the criminal extortion that Fernandez-Gonzalez reported did not constitute persecution on account of political opinion. As to his membership in a particular social group, the IJ stated that Fernandez-Gonzalez had identified two social groups—Salvadoran military involved in anti-gang operations and Salvadoran prison guards who refuse to cooperate with the inmates. The IJ concluded that Fernandez-Gonzalez had not established that these two identified groups were distinct particular social groups. The IJ determined that Fernandez-Gonzalez's vague and

4

general testimony concerning who was making the threats, what gangs they belonged to, and whether they were connected from one prison to the other, was insufficient to establish their intent or inclination to harm him further.

The IJ also found Fernandez-Gonzalez failed to establish past persecution, as he only testified to one incident of being slapped and beaten, resulting in bruises, plus telephonic threats. Additionally, the IJ noted that Fernandez-Gonzalez had safely relocated to another area of El Salvador for over a year. Fernandez-Gonzalez's general assertions that the police were corrupt and unwilling to defend against gangs were insufficient to establish he would more likely than not be tortured by or with the acquiescence of public officials. The IJ therefore denied his application for asylum, withholding of removal, and CAT protection.

Fernandez-Gonzalez filed a notice of appeal to the BIA; the BIA affirmed. The BIA stated that it would not directly address the IJ's adverse credibility determination, as it instead concluded that the IJ's findings established that Fernandez-Gonzalez did not meet his burden under INA § 208(b)(1)(B)(ii), 8 U.S.C. § 1158(b)(1)(B)(ii), because his testimony was not persuasive and did not refer to sufficient specific or detailed facts. The BIA determined that the other evidence in the record was not sufficient to meet Fernandez-Gonzalez's overall burden of proof. The BIA affirmed the IJ's determination that the telephonic threats, demands, and one beating did not rise to the level of persecution. The BIA

5

also concluded that Fernandez-Gonzalez's testimony that the gang members demanded $3,000 did not constitute persecution on account of political opinion. Finally, the BIA concluded that the IJ had thoroughly discussed Fernandez-Gonzalez's claim regarding membership in a particular social group and that Fernandez-Gonzalez had not demonstrated an entitlement to CAT relief.

In his petition for review, Fernandez-Gonzalez argues that the BIA erred in affirming the IJ's denial of his application because he presented substantial and sufficient evidence to demonstrate that he suffered past persecution due to his membership in a particular social group as a soldier in the Salvadoran military involved in anti-gang operations and as a Salvadoran prison guard refusing to cooperate with inmates.

## II. DISCUSSION

We review the BIA's decision as the final judgment, unless the BIA expressly adopted the IJ's decision. *Lyashchynska v. U.S. Att'y Gen.*, 676 F.3d 962, 966-67 (11th Cir. 2012). Additionally, where the BIA expressly agrees with the reasoning of the IJ's decision, we review both decisions to the extent of the agreement. *See Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016). We do not consider issues that were not reached by the BIA. *Id.* We lack jurisdiction to review claims raised in a petition for review unless the petitioner

exhausted his administrative remedies by raising the claim before the BIA. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006).

We review de novo the BIA's legal conclusions, including whether an alleged group qualifies as a "particular social group" under the INA. *Gonzalez*, 820 F.3d at 403. We review factual determinations under the highly deferential substantial evidence test. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1254 (11th Cir. 2006). We must affirm the decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 1254-55 (quotation omitted). We will only reverse if the record compels reversal. *Id.* at 1255. Under the substantial evidence test, the record is viewed in the light most favorable to the BIA's decision, drawing all reasonable inferences in favor of that decision. *Id.*

The Attorney General has the authority to grant asylum to an alien who meets the INA's definition of "refugee." INA § 208(b)(1)(A), 8 U.S.C. § 1158(b)(1)(A). A refugee is:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). The applicant bears the burden of proving that he or she is a refugee. INA § 208(b)(1)(B)(i), 8 U.S.C.

7

§ 1158(b)(1)(B)(i).  The alien's testimony may be sufficient to sustain his burden without corroboration, but only if the factfinder finds that his testimony is credible, is persuasive, and refers to specific facts sufficient to establish a right to relief.  *See* INA § 208(b)(1)(B)(ii), 8 U.S.C. § 1158(b)(1)(B)(ii).

The alien must present specific and credible evidence demonstrating he (1) was persecuted in the past based on one of the protected grounds or (2) has a well-founded fear that he will be persecuted in the future based on one of the protected grounds.  8 C.F.R. § 208.13(b); *Ruiz*, 440 F.3d at 1257.  A protected ground includes race, religion, nationality, membership in a particular social group, or political opinion.  8 C.F.R. § 208.13(b)(1), (2)(A).  A showing of past persecution creates a rebuttable presumption of a well-founded fear of future persecution. *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1232 (11th Cir. 2007).

Persecution is an extreme concept that requires more than a few isolated incidents of verbal harassment or intimidation.  *See, e.g.*, *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1229, 1231 (11th Cir. 2005) (concluding that the record did not compel finding persecution occurred when an alien received death threats over the phone and a bomb was detonated at the restaurant where she worked); *Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1171-72 (11th Cir. 2008) (concluding that the record did not compel finding persecution occurred when an alien was detained for 36 hours and beaten by police after participating in a political rally, requiring a 2-

day hospital stay, several medications, and 2 weeks of rest).  In determining whether an alien has suffered past persecution, the factfinder must consider the cumulative effects of the incidents.  *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 861 (11th Cir. 2007).

The BIA has held that a "particular social group" must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question."  *See Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014); *see also Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1196 (11th Cir. 2006) (affording *Chevron*[1] deference to the BIA's interpretation of the phrase "particular social group," and noting that particular social groups include persons with a "shared characteristic such as sex, color, or kinship ties, or in some circumstances a shared past experience" (quotation and ellipses omitted)).  This interpretation takes into account that members would "suffer significant harm if asked to give up their group affiliation, either because it would be virtually impossible to do so or because the basis of affiliation is fundamental to the members' identities or consciences."  *Matter of M-E-V-G-*, 26 I. & N. Dec. at 237-38.  To be socially distinct, a group need not have its members be visually identified as such by society; rather, the group must be perceived as a distinct group by society.  *Id.* at 240.  A particular social group is

---

[1] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984).

not created solely by the risk of persecution; under the INA, the group must not be "too numerous or inchoate." *Castillo-Arias*, 446 F.3d at 1198.

To establish eligibility for withholding of removal under the INA, the applicant must demonstrate that, if he was removed, his life or freedom would be threatened because of his race, religion, nationality, membership in a particular social group, or political opinion. *Sepulveda*, 401 F.3d at 1232. The standard for withholding of removal is "more stringent" than the standard for asylum. *Id.* The applicant must establish that it is "more likely than not" that he will be persecuted or tortured if returned to his country. *Id.*

Under CAT, the applicant for relief bears the burden of proving that it is "more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Torture is defined as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1). A public official acquiesces to torture when he or she has prior knowledge of the activity constituting torture and then breaches a legal duty to intervene to prevent the torture. *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d

10

1239, 1242 (11th Cir. 2004).  Unsuccessful government activity to combat non-governmental perpetrators of torture does not constitute acquiescence.  *Id.* at 1243.

First, the BIA did not consider the IJ's adverse credibility determination, nor did the BIA consider whether Fernandez-Gonzalez had a well-founded fear of future persecution or whether the alleged persecutors were acting on account of this membership in a particular group.  Accordingly, neither of these findings is before us.  *See Gonzalez*, 820 F.3d at 403.  Furthermore, while Fernandez-Gonzalez argues that the IJ was biased in assessing his credibility and the viability of his claims for relief, because he did not raise the issue before the BIA, we lack jurisdiction to consider it.  *Amaya-Artunduaga*, 463 F.3d at 1250.

Considered cumulatively, Fernandez-Gonzalez's testimony that he was beaten once, during which he suffered bruising, and that he received an indeterminate number of telephonic threats does not compel a finding that the alleged harm met the "extreme" threshold level of persecution.  *See, e.g.*, *Sepulveda*, 401 F.3d at 1229, 1231; *Djonda*, 514 F.3d at 1171-72.  Because the record does not compel a finding of past persecution, substantial evidence supports the BIA's determination that Fernandez-Gonzalez failed to show he was eligible for asylum or withholding of removal.

Furthermore, the BIA and IJ correctly concluded that neither of Fernandez-Gonzalez's alleged particular social groups qualified as such under the INA.

11

Fernandez-Gonzalez presented no evidence that either Salvadoran military members who are engaged in anti-gang operations or Salvadoran prison guards who refuse to cooperate with inmates are perceived as socially distinct groups within El Salvador. *See Matter of M-E-V-G-*, 26 I. & N. Dec. at 237-38; *Castillo-Arias*, 446 F.3d at 1196.

Finally, the past harm that Fernandez-Gonzalez testified about did not amount to torture and does not compel a finding that it is more likely than not that he would be tortured if removed to El Salvador. 8 C.F.R. §§ 208.18(a)(1), 1208.16(c)(2). Although the record supports that there was corruption in the Salvadoran government at the time and the governmental efforts to combat corruption and gang violence were not successful, the lack of success in governmental efforts to combat corruption and gang violence does not mean that the Salvadoran government would acquiesce in any future torture of Fernandez-Gonzalez or actively participate in torturing him. *See Reyes-Sanchez*, 369 F.3d at 1242. Accordingly, substantial evidence supports the BIA's determination that Fernandez-Gonzalez failed to establish that he was entitled to CAT relief.

**PETITION DENIED.**

12